UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TCE SYSTEMS, INC.,

        Plaintiff,

                                                                 Case number 00-72628
v.                                               Honorable Julian Abele Cook, Jr.

THOMAS & BETTS CORP.,

        Defendant.

_____

ORDER

On June 9, 2000, the Plaintiff, TCE Systems, Inc., initiated this cause of action, seeking to obtain damages for claimed breaches of contract by the Defendant, Thomas & Betts, Corp., as well as injunctive relief. On June 27, 2003, the Plaintiff filed a motion, in which it requested an opportunity to amend its complaint with three additional counts. This motion was subsequently granted by the Court.[1] Three days later, the Plaintiff filed two additional pleadings (to wit, a "Motion *In Limine* to Bar the Introduction of Certain Payment Records Among Defendant's Proposed Exhibits from Admission at Trial," and a "Supplement Emergency Motion for Expansion of Time to File All Motions *In Limine*"). Both motions were denied. On April 8, 2005, the Plaintiff filed a "Motion for Leave to File Second Complaint," in which it sought to inject four additional defendants into this matter. Approximately two weeks later (April 26, 2005), the Court struck the First Amended Complaint from the record. Furthermore, on July 1, 2005, the Plaintiff's "Motion for Leave to File Second Complaint" was rejected by the Court.

---

[1] The Plaintiff identified its proposed new claims against the Defendant as follows: (1) "Interference with Existing and Prospective Business Advantage," (2) "Fraudulent Misrepresentation," and (3) "Correction of Inventorship Per 35 USC §§ 116, 256."

Two months later (August 30, 2005), the Plaintiff delivered two expert reports to the Defendant, as required under Fed. R. Civ. P. 26(2). A third expert report was delivered by the Plaintiff to the Defendant two days later (September 1, 2005). Now before this Court is the Defendant's "Motion to Exclude Proposed Reports and Testimony of Plaintiff's Expert Witnesses."

For the reasons that are stated below, the Defendant's "Motion to Exclude Proposed Reports and Testimony of Plaintiff's Expert Witnesses" will be granted in part and denied in part.

I.

Rule 702 of the Federal Rules of Evidence regulates the admissibility of expert testimony. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

District courts are given wide latitude to control the admission or exclusion of expert testimony at trial. *See* Fed. R. Evid. 104(a); *American & Foreign Ins. Co. v. General Elec.* Co., 45 F.3d 135, 137 (6th Cir. 1995); *Mannino v. International Mfg. Co.*, 650 F.2d 846, 849 (6th Cir. 1981). In *Patterson v. Central Mills, Inc.*, the Sixth Circuit opined, "[i]n the exercise of their gatekeeping role under the Federal Rules of Evidence, district courts are responsible for determining the relevance and reliability of all expert testimony." 64 Fed. Appx. 457, 462 (6th Cir. 2003) (citing Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). District courts, in their assessment

of the "reliability" of a proposed expert's testimony, are advised to "determine, [among other things], whether the expert's training and qualifications relate to the subject matter of his proposed testimony." *Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997). The proponent of the expert testimony bears the burden of establishing admissibility "by a preponderance of the proof." *See Daubert*, 509 U.S. at 592 n. 10; *see also U.S. v. Pollard*, 128 F. Supp.2d 1104, 1119 (E.D. Tenn. 2001) ("Although *Daubert* did not state who has the burden to prove admissibility, under ordinary evidentiary principles, the proponent of the evidence has the burden of establishing that the evidence is admissible." (citation omitted)).

Rule 402 of the Federal Rules of Evidence reiterates that all evidence, including expert testimony, must be relevant to the issues before the trier of fact.[2] Moreover, Rule 403 further limits the admissibility of expert testimony in the following manner:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *Daubert*, the Supreme Court held that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." 509 U.S. at 595 (internal quotation marks and citation omitted).

In utilizing this admonition, this Court must decide if (1) the issues in the projected opinions

---

[2]Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable of less probable than it would be without the evidence." Fed. R. Evid. 401.

of these challenged experts are relevant to the Plaintiff's claims (as denoted in Counts one, two and three in the Complaint), (2) the reports and purported testimonies by these expert witnesses are unduly prejudicial to the Defendant under Rule 403, and (3) the Plaintiff's proposed expert witnesses are qualified to testify on these issues, as required under Rule 702 of the Federal Rules of Evidence.

II.

A. <u>Report and Projected Testimony of Harold James Henning</u>

In support of its motion, the Defendant argues that "[t]he expert report and testimony of Mr. Harold James Henning should be excluded because it (sic): ( i) improperly offers conclusions and opinions outside the scope of the author's purported field of expertise, (ii) discusses and relies upon issues specifically excluded by prior rulings of this Court, and (iii) is replete with conclusions and opinions unnecessary for the edification of the jury." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at 4.  Essentially, the Defendant's objections to Mr. Henning's report and proposed testimony stem from (1) his alleged lack of qualifications to testify on the subject matters within the report and (2) the failure of the Plaintiff to establish any relevance between this report and the issues in this case.

Foremost, the Court notes that its prior rulings do not preclude the Plaintiff from proffering evidence in support of its original Complaint.  However, upon reviewing this challenge, the Court is not satisfied that Mr. Henning's testimony or his report "will assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702.  Here, Mr. Henning, who has been identified by the Plaintiff as a "Forging Specialist," declares in the first sentence of his report that "[t]he basic issues involved with this case are to develop an opinion about the obligations of T&B

4

to pay TCE for remaining invoices and for extenuating damages resulting from non-conformance to contractual agreements signed and agreed to by both parties in 1995." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits., at Ex. A.  Based on this and similar language in his report, the Court finds that his report and purported testimony will improperly and unduly focus on legal conclusions.[3] His qualifications do not qualify him to testify or opine on legal issues, which are properly in the province of this Court and the jury.  *See, e.g.*, *Berry v. City of Detroit*, 25 F.3d 1342, 1354-55 (6th Cir. 1994) ("Although an expert's opinion may embrace[ ] an ultimate issue to be decided by the trier of fact[,] Fed. R. Evid. 704(a), the issue embraced must be a factual one. . . . This circuit is in accord with other circuits in requiring exclusion of expert testimony that express a legal conclusion." (internal quotation marks and citation omitted)).  Hence, this Court finds that the probative value of Mr. Henning's report and projected testimony are substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," all in violation of Fed. R. Evid. 403.

Accordingly, and for the reasons that are stated, the Court grants the Defendant's motion to exclude Mr. Henning's report and his testimony.

B.  Report and Projected Testimony of Dr. Wojciech Z. Misiolek

---

[3] Mr. Henning's report further poses (and later purports to answer) the following questions: "(a) Did TCE deliver a quality system? and (b) Did T&B respond to the letter of the agreements both firms agreed to in August 1995? In other words: (c) Did the records show that accepted inter-company ethics were being followed in dealing with each other?"  *Id.*  At one point in his report, he concludes that "[t]his process of outsourcing without discussions with TCE was definitely at odds with the original non-disclosure clauses or secrecy agreements built into the original licence (sic) agreement." *Id.* The Court found similar statements repeated throughout his report.

The Defendant further contends that "[t]he expert report and testimony of Dr. Wojciech Z. Misiolek should be excluded because it (sic) is directed to claims and issues specifically excluded by prior rulings of this Court." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at 6.

At the beginning of his analysis, Dr. Misiolek states that "[t]he major question to be answered by the performed analysis, is whether TCE developed and created product, which design, function and manufacturing processes were beneficial, valuable, original, and unique when they were provided to T&B?" Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits., at Ex. B. In its opposition papers, the Plaintiff submits that Dr. Misiolek's testimony is relevant to the issues in this case, in that it would assist the jury in determining (1) if trade secrets existed under the License Agreements, as well as the measure of the damages, if any, which were caused by the Defendant's alleged violations of the parties' respective contractual obligations, and (2) the extent to which it has fully satisfied its performance obligations under the License Agreement "in order to be entitled to payment from Defendant and to a return of the licensed technology . . . if payment was not made as agreed." Pl.'s Mem. Supp. Opp'n Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits., at 16-17. However, the Defendant disagrees, contending that "[t]here is simply no reason for an expert to discuss these matters unless the goal is to establish the existence and transfer of a trade secret, an issue specifically excluded from this case." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at 6.

With recognition that the Complaint in this case consists of two breach of contract claims, along with a request for an injunction, the Court concludes that the Plaintiff has met its burden by a preponderance of the evidence regarding the relevancy of Dr. Misiolek's opinions relating to the following issues: (1) the amount of damages, if any, that the Plaintiff is entitled to receive under the

License Agreement that encompasses trade secrets[4] and (2) the adequacy, if any, of the Plaintiff's performance under the License Agreements.  Furthermore, the Court is satisfied that Dr. Misiolek's credentials qualify him to testify on the matters within his report.[5]

Accordingly, the Court denies the Defendant's motion to exclude Dr. Misiolek's report and proposed testimony.

C.  Report and Projected Testimony of Jeffrey J. Mordaunt

Finally, the Defendant maintains that "[t]he expert report and testimony of Jeffrey J. Mordaunt, CPA, should be excluded, in whole or in part, because it (sic): ( i) raises a new theory of damages sufficiently debatable to have required its disclosure during discovery, (ii) discusses and relies upon claims and issues specifically excluded by prior rulings of this Court, and (iii) is replete with conclusions and opinions which are beyond the author's expertise." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at 6.

In his report, Mr. Mordaunt initially submits that "[t]he purpose of my retention is to analyze and quantify damages due [to] TCE as a result of the alleged actions and conduct of T&B." *Id.* However, this Court has found very little within Mr. Mordaunt's report which purportedly

---

[4]In its Complaint, the Plaintiff asserts that, "Defendant entered into a License Agreement . . . concerning the tooling and confidential information necessary which tooling and confidential information the Defendant agreed and acknowledged constitutes a trade secret . . . to manufacture the channel nut." Pl.'s Complaint at 3.  The Plaintiff further states in its Complaint that "TCE agreed to provide consulting services regarding the Trade Secret." *Id.*

[5]Dr. Misiolek explains his background as follows: "Since 1997, I have been the Loewy Chair in Materials Forming and Processing and Director of the Institute for Metal Forming at Lehigh University in Bethlehem, P.A. I am faculty member of the Lehigh's Materials Science and Engineering (MS&E) as well as Mechanical Engineering and Mechanics (ME&M) departments." *Id.*

7

"analyze[s] and quantif[ies] damages." More specifically, this Court concludes that, inasmuch as (1) a significant part of the Mordaunt report addresses issues that were not raised in the Complaint[6] and (2) Mr. Mordaunt's education, experience and training[7] do not qualify him to discuss and testify to the legal conclusions in this action,[8] *see, e.g.*, *Berry*, 25 F.3d at 1354-55, his projected testimony will not "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

Moreover, Mr. Mordaunt's education and experience do not qualify him to interpret the conduct of the parties in this matter[9] or to opine about the factual events which surround this

---

[6] More specifically, in the section entitled "Unjust Enrichment," Mr. Mordaunt states that after "[i]ncluding prejudgment interest, damages relative to unjust enrichment [would] range from $1,366,048 to $1,686,072. . . . It is my understanding that this amount may be trebled under Michigan Law." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at Ex. C.

[7] In Mr. Morduant's curriculum vitae, he describes himself as possessing "extensive experience [which include] providing a broad range of business and financial advice to trial lawyers and in-house counsel throughout the dispute process, including matters involving breach of contract, intellectual property infringement, tortious interference, post-merger and acquisition disputes, fraud and forensic investigations, employment and compensation matters, shareholder disputes, defamation, Superfund remediation, business valuations, and alter ego matters." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at Ex. C.

[8] For example, Mr. Mordaunt opines, "TCE and T&B entered into a four year License Agreement relative to the Tooling and confidential information, i.e., trade secrets, necessary to manufacture the universal channel nut. . . . It appears TCE fulfilled its obligations to T&B as T&B accepted the equipment and tooling. However, T&B did not adequately compensate TCE for said services, equipment and tooling as agreed upon." *Id.* He concludes, "I have concluded that T&B has not paid TCE under the terms of the contract and License Agreement, as well as for additional consulting services." *Id.* Similar instances are repeated throughout his report.

[9] For example, Mr. Mordaunt states that "[t]he equipment, the Tooling and manufacturing know how, and the proprietary and confidential information and trade secrets developed by TCE were in great demand by T&B." Def.'s Mot. Ex. Prop. Rep. & Test. P.'s Ex. Wits. at Ex. C. Moreover, referring to the deposition of Mr. Herb Bradshaw, Mr. Mordaunt opines that "T&B was satisfied with the equipment and modifications provided by TCE." *Id.*

dispute.[10] The determination of these matters rests properly with the jury. Thus, the Court concludes that probative value of admitting the Mordaunt report and any testimony relating thereto "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403.

Accordingly, the Court grants the Defendant's motion to exclude the report and proposed testimony of the Plaintiff's expert, Jeffrey J. Mordaunt.

### III.

For the reasons that are stated above, the Court (1) grants the Defendant's motion to exclude the report and proposed testimony of Harold James Henning, (2) denies the Defendant's motion to exclude the report and proposed testimony of Wojciech Z. Misiolek, and (3) grants the Defendant's motion to exclude the report and proposed testimony of Jeffrey J. Mordaunt.

IT IS SO ORDERED.

DATED:   November 21, 2005              s/ Julian Abele Cook, Jr.
         Detroit, Michigan              JULIAN ABELE COOK, JR.
                                        United States District Judge


### Certificate of Service

I hereby certify that on November 21, 2005, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

---

[10]For example, an entire section (entitled "Background") of the Mordaunt report discusses his belief of the facts in the matter.

s/ Kay Alford

Courtroom Deputy Clerk